## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| LORRAINE MARTIN, individually and on behalf of all Others Similarly Situated, ) | |
| Plaintiff, ) | CIVIL ACTION No. |
| ) | 3:12-cv-01023 (JBA) |
| v. ) | |
| ) | |
| THE HEARST CORPORATION, SOUTHERN CONNECTICUT NEWSPAPERS INC., MAIN STREET CONNECT, LLC, d/b/a THE DAILY GREENWICH, and NEWS 12 INTERACTIVE, INC., ) | |
| ) | NOVEMBER 19, 2012 |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Ryan O'Neill, Esq. (ct28345)
Mark Sherman, Esq. (ct 26793)
Law Offices of Mark Sherman, LLC
29 Fifth Street
Stamford, CT  06905
Tel: (203) 358-4700
msherman@markshermanlaw.com

# **TABLE OF CONTENTS**

PAGE(S)

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATATEMENT ........................................................................1

SUMMARY OF THE LEGAL ARGUMENTS .......................................................2

FACTUAL BACKGROUND ..................................................................................4

ARGUMENT ..........................................................................................................4

    I.      STANDARD OF REVIEW ....................................................................4

    II.    THE SINGLE PUBLICATION RULE DOES NOT BAR PLAINTIFF'S CLAIMS ...............................................................................................5

          A.    Connecticut Follows the Multiple Publication Rule .......................7

          B.    The Proper Application of the Single Publication Rule Allows Plaintiff to Base Her Claims on Publications Taking Place After January 11, 2012 ........9

          C.    Pursuant to the Republication Exception, The Court May Deem Publication to Have Taken Place After Defendants' Refusal to Remove the Arrest Allegation ................................................................................12

    III.   PURSUANT TO THE ERASURE STATUTE, THE ARREST ALLEGATIONS SHOULD BE CONSIDERED FALSE AS OF THE DATE OF DISMISSAL ......14

    IV.   DEFENDANTS' REMAINING ARGUMENTS ARE UNAVAILING ................18

CONCLUSION ........................................................................................................20

## **TABLE OF AUTHORITIES**

CASES                                                                  PAGE(S)

Anselmi v. The Denver Post, Inc., 552 F.2d 316 (10th Cir. 1977)..................................................8

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)..........................................................5

Bahr v. Statesman Journal Co., 51 Or. App. 177, 624 P.2d 664 (Or. Ct. App. 1981)...................17

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)...............................................................4, 5

Bernheim v. Litt, 79 F. 3d 318 (2d Cir. 1996) ......................................................................5

Corp. v. Merrill Lynch Commoditties Inc., 748 F.2d 744 (2d Cir. 1984) .......................................5

Cweklinsky v. Mobil Chemical Company, 267 Conn. 210, 837 A.2d 759 (Conn. 2004)...........7, 8

Doctor's Assocs., Inc. v. QIP Holder, LLC,
    No. 3:06-cv-1710(VLB), 2007 WL 1186026,  (D. Conn. 2007) ......................................18

Dominiak v. National Enquirer,
    439 Pa. 222, 266 A.2d 626, 42 A.L.R.3d 798 (Pa. 1970) .................................9, 10, 11, 12

EBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .................................13

Firth v. State of New York, 98 NY2d 365, 775 N.E.2d 463, 747 N.Y.S.2d 69 (N.Y. 2002) ....7, 12

G.D. v. Kenny, 205 N.J. 275, 15 A.3d 300 (N.J. 2011)..............................................................17

Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)............................................................5

Hartman v. American News Co., 69 F.Supp. 736 (W.D. Wisc. 1947) .......................................10

Hechtman v, Connecticut Department of Public Health, 2009 WL 5303796 (Conn.Super.)......7, 8

Lamon v. Butler, 44 Wash. App. 654 (Wash. 1986) ...........................................................6, 16

Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).......................................................................5

Lewis v. Reader's Digest Assoc., Inc., 162 Mont. 401, 512 P.2d 702 (Mont. 1973)....................8

Montinieri v. Southern New England Tel. Co., 175 Conn. 337, 398 A.2d 1180 (1978)..............19

Mytych v. May Dep't Stores Co. 34 F. Supp. 2d 130 (D. Conn. 1999)........................................5

Novak v. Overture Servs, Inc., 309 F. Supp.2d 446 (E.D.N.Y. 2004) ........................................19

Register.com, Inc. v. Verio, Inc., 356 F.3d 393 (2nd Cir. 2001) ...................................13

Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,
       748 F.2d 774, 779 (2d Cir. 1984)...................................................................................5

Scheurer v. Rhodes, 416 U.S. 232, 236 (1974)..............................................................5

State v. Morowitz, 200 Conn. 440, 512 A.2d 175, 182 (1986)......................................15

Winrod v. McFadden Publications, 62 F. Supp. 249 (N.D. Ill. 1945) ...............10, 11, 12

Witt v. Yale-New Haven Hosp.,
       51 Conn.Supp. 155, 977 A.2d 779 (Conn. Super. Sept. 30, 2008)...........................19, 20

Woods v. Prestwick House, Inc., 247 P.3d 1183 (Okla. 2011) ...................................7, 8

Statutes

Conn. Gen. Stat. § 51-199b (2011) ...........................................................................9, 18

Conn. Gen. Stat. § 54-142a (2011) ...........................................................................1, 15

Other Authorities

Note, The Single Publication Rule in Libel: A Fiction Misapplied,
       62 Harv. L. Rev. 1041 (1949) ....................................................................................10

Odelia Braun, Internet Publications and Defamation: Why the Single Publication Rule Should
       Not Apply, 32 Golden Gate U. L. Rev. 639 (2003).....................................................11

Ohio Elder Law § 4:11 (2012) ....................................................................................11

Restatement [Second] of Torts § 577 (1977)............................................................7, 13

Restatement [Second] of Torts § 577A (1977) .......................................................7, 8, 9

Restatement [Second] of Torts § 581A (1977) ..............................................................6

Sapna Kumar, Website Libel and the Single Publication Rule, 70 U. Chi. L. Rev. 639 (2003) ...11

Plaintiff, Lorraine Martin, individually and on Behalf of all Others Similarly Situated ("Plaintiff") respectfully submits this Memorandum of Law in Support of Plaintiff's Opposition to Defendants Hearst Corporation's, Main Street Connect, LLC's, and News 12 Interactive, Inc.'s (collectively, the "Defendants'") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (the "Defendants' Motion").[1]

## PRELIMINARY STATEMENT

Before the Court are several issues of first impression related to the interplay between Connecticut General Statute § 54-142a (the "Erasure Statute") and common law claims based upon the publication of alleged false and defamatory information.

The Erasure Statute was enacted to protect people from the harmful consequences of a criminal charge which is subsequently dismissed in Superior Court. To accomplish this important purpose, upon dismissal of criminal charges, the Erasure Statute erases all records pertaining to the arrest, charges, and subsequent criminal proceedings. Once the Erasure Statute takes effect, the Erasure Statute deems the arrest to have never taken place, and the person previously arrested may, ***under oath and the penalties of perjury***, swear that the arrest never occurred. At that point, the wrongfully accused may breathe a sigh of relief, and attempt to move forward with her life, putting the erased arrest behind her - that is, of course, until she "Googles" her name and finds the now-defamatory accusation alive and well online.

The Internet has proven to be an insurmountable obstacle for those who wish to move on with their live without the taint of criminal charges after their cases have been dismissed. That is

---

[1] Plaintiff submits this single Opposition Memorandum even though Defendant News 12 Interactive Inc. submitted a separate Motion to Dismiss and Memorandum of Law. This is because News 12 Interactive, Inc. sets forth the same arguments and grounds for dismissal as Defendants Hearst Corporation and Main Street Connect, LLC. Thus, in the interest of efficiency, Plaintiff treats Defendants' Motion as one aggregate Motion to Dismiss for the purposes of this Opposition Memorandum.

because publishers, like the Defendants, allow these wrongful and erased allegations to remain on their websites unchanged, which can then be accessed within seconds by anyone in the world. This forces the aggrieved individual to have to explain and relieve the details of their dismissed criminal prosecution in order to rectify the apparent inconsistency – precisely what the Erasure Statute sought to avoid.

At issue in this case is whether the wrongfully accused have any hope of stopping the dissemination of information that our legislature has deemed to be false; whether they have any recourse against those who profit from disseminating such misinformation; and whether they have any hope of moving on in their life without the taint of a wrongful arrest.

## SUMMARY OF LEGAL ARGUMENTS

Defendants' primary argument boils down to three main points. First, Defendants argue that, pursuant to the single publication rule, the Arrest Allegations (as defined below) must be deemed to have been published in August of 2010. Thus, as Defendants argue, because the Arrest Allegations were not yet false as of that date, Plaintiff's claims should be barred. Second, Defendants argue that that the Erasure Statute cannot render the Arrest Allegations false at any time. Third, Defendants argue that even if the Arrest Allegations become false by virtue of the Erasure Statute, retroactive liability cannot be imposed upon them by deeming the Arrest Allegations to be false after the fact.

As more thoroughly explained in the remainder of this Memorandum, Defendants' arguments should fail. First, the Defendants are incorrect in asserting that the date of publication must be deemed to have been in August of 2010 pursuant to the single publication rule. Rather, Plaintiff argues that the date of publication may be deemed to have been made at or after January

11, 2012, when the Arrest Allegations were in fact false. This argument is based on three theories.

First, Connecticut currently applies the multiple publication rule, and not the single publication rule. Under the multiple publication rule, publication of information on a website is accomplished each time the information is viewed. Second, even if the Court were to apply the single publication rule, a proper application of that rule allows Plaintiff, and not Defendants, to select *any* individual publication as the date of publication for her one and only civil action. Third, even if the Court were to apply the single publication rule in the manner advocated by Defendants, then pursuant to the republication exception, the Court may still deem the Arrest Allegations to have been published on or after the date that Plaintiff requested removal of the Arrest Allegations.

Next, Defendants are incorrect in asserting that the Erasure Statute does not operate to make the Arrest Allegations false. As shown in Section III of this Memorandum, Connecticut law and common law principles of defamation support the conclusion that the Arrest Allegations may be deemed false for the purposes of Plaintiff's causes of action.

Further, Defendants' argument that the Erasure Statute cannot impose retroactive liability misconstrues the nature of Plaintiff's claims. Plaintiff is not seeking to impose liability for publications made prior to January 11, 2012. Rather, Plaintiff's claims are based upon the continued publication after January 11, 2012, and in particular, seeks damages for claims arising after Defendants were put on notice that the Arrest Allegations had become false and inaccurate.

Finally, Section IV of this Memorandum addresses Defendants' remaining arguments, which, as shown below, are unavailing. Accordingly, for these reasons and the reasons set out more fully herein, the Court should deny Defendants' Motion in its entirety.

**FACTUAL BACKGROUND**

In late August of 2010, Defendants, in their online news publications, published the following statements concerning Plaintiff (the "Arrest Allegations"):

- Plaintiff was "arrested and charged with numerous drug violations…after police received information that a pair of brothers were selling marijuana in town." (Am. Compl. ¶ 17).

- Plaintiff was "charged with possession of narcotics, possession of drug paraphernalia and possession of marijuana.  She was released after posting a $1,000 bond and is due in court Aug. 27." Id. at ¶ 19.

On January 11, 2012, the Arrest Allegations became false.  Id. at ¶ 24.  Plaintiff concedes that the basis of her allegation that the Arrest Allegations became false is that these allegations were technically "erased" by operation of law pursuant to the Erasure Statute.

However, after January 11, 2012, despite having knowledge of the falsity of the statements, Defendants chose to continue publishing the Arrest Allegations on their websites as of the date of this Action.  See id. at ¶¶ 26 - 27, 38.  In fact, prior to filing this lawsuit, Plaintiff delivered direct requests to Defendants to remove the Arrest Allegations from their website, but they have yet to do so.  Id. at ¶¶ 26 - 27.

**ARGUMENT**

## I.  STANDARD OF REVIEW

A court may dismiss a claim under Rule 12(b)(6) only if the plaintiff's allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-556 (2007).  Plausibility at the pleading stage is distinct from probability, and

"a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556.  Accordingly, a Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of the complaint.  Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996).

Rather, the purpose of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. Mytych v. May Dep't Stores Co., 34 F. Supp. 2d 130 (D. Conn. 1999); Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  Further, when reviewing a motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences from these allegations in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  From there, the court must decide whether it is plausible that plaintiffs have a valid claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 674, 129 S. Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

Finally, as Justice Stevens explained in his dissent in Twombly, courts should be especially reluctant to grant dismissal before there has been an opportunity to conduct discovery, as "...in such cases facts are often held exclusively by the defendant, and dismissals prior to discovery prevent the plaintiff from discovering these facts."

## II.     THE SINGLE PUBLICATION RULE DOES NOT BAR PLAINTIFF'S CLAIMS.

Defendants contend that pursuant to the "single publication" rule, Plaintiff's claims must be evaluated as of the dates that Defendants first respectively published the Arrest Allegations in

August of 2010.[2]  In effect, Defendants argue that because the Arrest Allegations were true as of August of 2010, Plaintiff's claims should be barred.  As more thoroughly explained in the subsections that follow, Defendants' argument fails for three reasons.[3]

First, controlling authority in Connecticut indicates that Connecticut follows the multiple publication rule, and not the single publication rule.   Under the multiple publication rule, each publication stands on its own and can support its own cause of action.  Thus, following the current view in Connecticut, Plaintiff's claims may be based on publications that took place after January 11, 2012, when the Arrest Allegations were in fact false.

Second, even if the Court were to apply the single publication rule, a proper application of that rule allows Plaintiff to select any individual publication as the date of publication for her one and only action.  Under that view, which was adopted by the Pennsylvania Supreme Court, the Arrest Allegations may be deemed to have been published on or after January 11, 2012, when the Arrest Allegations were false.

Third, even if the Court were to apply the single publication rule in the manner advocated by Defendants, pursuant to the republication exception, the Court may still deem the Arrest Allegations to have been published on or after the date that Plaintiff requested removal of the Arrest Allegations.   This is because a refusal to remove defamatory material is a form of publication in and of itself.   That publication, moreover, was sufficiently distinct from the

---

[2] Plaintiff concedes that the truth or falsity of a statement for purposes of libel cases is judged as of the date of publication.  Lamon v. Butler, 44 Wash. App. 654, 659 (Wash. 1986) (citing Restatement (Second) of Torts § 581A, comment g (1977)).  Thus, Plaintiff's arguments focus on Defendants' respective publications taking place after January 11, 2012, the date that Plaintiff's alleged arrest was erased by effect of the Erasure Statute.

[3] For the purpose of this section, Plaintiff assumes that the Arrest Allegations became false as of January 11, 2012, pursuant to the Erasure Statute.  Defendants' arguments related to whether the Arrest Allegations can even be considered false pursuant to the Erasure Statute, is more thoroughly discussed in Section III of this Memo.

original publication of the Arrest Allegations, because it was intended to reach a new audience. Thus, under the republication exception to the single publication rule, Defendants' refusal to remove the Arrest Allegations in this case constitutes its own publication, which may support its own cause of action.

### A. Connecticut Follows the Multiple Publication Rule.

Defendants' argument rests on the premise that Connecticut follows the single publication rule, and not the multiple publication rule.  However, controlling authority in suggest that Connecticut, like other states, still applies the multiple publication rule.  Under this view, Plaintiff's claims may be based on Defendants' publications that took place on or after January 11, 2012, when the Arrest Allegations were in fact false.

The multiple publication rule is the traditional view that libel is considered published each time it is communicated to a new individual.  Hechtman v. Connecticut Dep't of Public Health, No. CV094043516, 2009 WL 5303796, at *9 (Conn. Super. Dec. 3, 2009) (citing Restatement (Second) of Torts §§ 577, 577A).  In mass publication cases, such as cases involving newspapers, television broadcasts, and magazines, this means that "each sale or delivery of a single copy of a newspaper or magazine is a distinct and separate publication of a libel therein contained."  Woods v. Prestwick House, Inc., 247 P.3d 1183, 1189 (Okla. 2011) (citing the Connecticut Supreme Court in Cweklinsky v. Mobil Chemical Company, 267 Conn. 210, 217, 837 A.2d 759 (Conn. 2004)).

Given the similarities to traditional mass publication, courts recognize that in the internet context, a publication takes place each time a website is viewed.  See Firth v. State, 98 N.Y.2d 365, 775 N.E.2d 463, 465 (N.Y. 2002).

On the other hand, the single publication rule recognizes that any one edition of a mass publication is aggregated into one single publication upon which only one cause of action may be maintained.  Restatement (Second), Torts § 577A[4].  While it is true that many states have adopted the single publication rule in mass publication cases, some states have declined to adopt it.  See e.g., Lewis v. Reader's Digest Assoc., Inc., 162 Mont. 401, 512 P.2d 702, 705-06 (Mont. 1973); Anselmi v. The Denver Post, Inc., 552 F.2d 316, 325 (10th Cir. 1977) (noting that "the single publication rule has not been adopted in Wyoming and is unlikely to be adopted.").

Connecticut's appellate courts have not yet considered whether to apply the single publication rule.  However, the Connecticut Supreme Court expressly recognized that it currently applies the multiple publication rule by stating that "a new cause of action arises with each publication…"  Cweklinsky, 267 Conn. 210 at 217, 224 (Conn. 2004) (citations omitted). Following that express view, courts in both Connecticut and foreign jurisdictions recognize that Connecticut currently applies the multiple publication rule.  See Woods v. Prestwick House, Inc., 247 P.3d 1183, 1189 (Okla. 2011) (citing Cweklinsky in stating that "each sale or delivery of a single copy of a newspaper or magazine is a distinct and separate publication of a libel therein contained."); see also Hechtman, 2009 WL 5303796, at * 9 (stating that "Connecticut courts currently recognize that a 'new cause of action arises with each publication.'" (quoting Cweklinsky, 267 Conn. at 224)).

As the foregoing shows, Defendants' premise that Connecticut follows the single publication rule is simply not accurate.  To the contrary, the only indication from Connecticut's highest Court is that the multiple publication rule should be applied in all libel cases.  Under this view, Defendants are deemed to have published the Arrest Allegations every day that they made it available on their website and it was viewed.  Thus, Plaintiff's cause of action may be correctly

---

[4] Secondary sources are attached hereto as **Exhibit A**, and are in alphabetical order.

based upon publications taking place after January 11, 2012, when the Arrest Allegations became false by operation of law pursuant to the Erasure Statute.[5]   Accordingly, Defendants' Motion should be denied.

### B. The Proper Application of the Single Publication Rule Allows Plaintiff to Base Her Claims on Publications Taking Place After January 11, 2012.

Even if the Court were to apply the single publication rule in this case, the proper application of that rule allows Plaintiff to select any individual publication as the date of publication for the one and only cause of action to which she is entitled.  Under this manner of applying the single publication rule, the Arrest Allegations may be deemed to have been published on or after January 11, 2012, when the Arrest Allegations were false.

As Defendants correctly point out, the single publication rule is a rule which aggregates mass publications and makes them in effect a single publication.  See e.g., Restatement (Second) of Torts § 577A (3).  The rule states that upon that single publication:

> (a) only one action for damages can be maintained; (b) all damages suffered in all jurisdictions can be recovered in the one action; and (c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions.

Id. at (4).   The purpose of the rule is "designed to offer protection to the defendant from countless suits, and almost endless tolling of the statute of limitations and diversity in applicable substantive law."  Dominak v. National Enquirer, 439 Pa. 222, 266 A.2d 626, 629 (Pa. 1970).

With respect to these basic concepts of the rule, Plaintiff and Defendants appear to be in agreement.  However, the issue upon which Plaintiff parts ways with Defendants is: on what date is the single aggregate publication deemed to have taken place?

---

[5] Plaintiff submits that controlling authority in Connecticut dictates that the multiple publication rule should be applied.   To the extent this Court believes the issue is not clear, Plaintiff respectfully requests that the issue be certified to the Connecticut Supreme Court for resolution given the lack of controlling authority on the issue, and given that the answer would be determinative to a material issue in this litigation.  C.G.S. § 51-199b(d).

Defendants cite to cases which express the view that the single aggregate publication should be deemed to have taken place on the date that the mass publication is first made available to the public.  As the following explains, this is in an improper application of the single publication rule, and a view which would have dangerous consequences and present opportunities for significant abuses.  Rather, Plaintiff submits that the single publication rule should be applied in one of two ways: (1) that a plaintiff may choose any publication as the single publication upon which her single cause of action may be based, or (2) that a plaintiff may choose any publication where the defendant, by its own acts, chose to make it available to the public.

The dangers inherent in applying the view advocated by the Defendants have long been recognized by courts, and are best described by an example laid out by the Pennsylvania Supreme Court in Dominak v. Nat'l Enquirer:

> An unscrupulous publisher might print a defamatory article about a California [plaintiff] and distribute a few copies in New York; the plaintiff might well feel that the time and expense involved did not warrant the filing of an action; then after the one year period was over (assuming California has a one year period also) the publisher could flood California and the rest of the country with the article and, under appellees' theory, face no threat of liability.

266 A.2d at 629.  See also, Hartman v. American News Co., 69 F.Supp. 736, 738-39 (W.D. Wisc. 1947); Winrod v. McFadden Publications, 62 F. Supp. 249, 252 (N.D. Ill. 1945); The Single Publication Rule in Libel: A Fiction Misapplied, 62 Harv. L. Rev. 1041, 1042-46 (1949).

Moreover, these dangers are more prevalent in the context of the internet.  In the internet context, libelous information concerning a person may be posted on a discrete website that is not well known.  At that point, consistent with policies of judicial economy, that person may not feel that the time and expense involved in litigating warrants filing an action.  However, if that discrete website later becomes popular, or if another person wishes to inflict harm upon her by

10

spreading word of the libelous information, that once little known libelous information can "go viral and spread within a matter of seconds."  Ohio Elder Law § 4:11 (2012 ed.).  Under Defendants' view, the injured party would have no recourse if the statute of limitations happened to have expired at that time.  Such a view would be perverse to justice, and it is for reasons like these that legal scholars have advocated against the use of the single publication rule in this manner for internet cases.  See e.g., Odelia Braun, Internet Publications and Defamation: Why the Single Publication Rule Should Not Apply, 32 Golden Gate U. L. Rev. 325 (2002); Sapna Kumar, Website Libel and the Single Publication Rule, 70 U. Chi. L. Rev. 639 (2003).

To avoid this injustice, Plaintiff submits that if the Court chooses to apply the single publication rule, it should apply it in one of two ways.  The first approach is that adopted by the Pennsylvania Supreme Court in Dominak, where it held that under the single publication rule, a "plaintiff may choose any publication as the single publication which represents his single cause of action."  266 A.2d at 629.  The court reasoned that this application would continue to avoid the danger of multiplicity of suits, as a plaintiff would still be limited to only one cause of action. Id.  In addition, the policy of avoiding an endless tolling of the statute of limitations would also remain intact, as a plaintiff under this approach "may only recover damages that result from the publication occurring within [the applicable number of years]… of the date he chooses."  Id.

Alternatively, this Court may choose to apply the single publication rule in the manner set forth in Winrod v. McFadden Publications, 62 F. Supp. at 252.  There, the Federal District Court held that the original date of a mass publication may be deemed the date of publication, unless the publisher, through its own acts, chooses to make the publication available to the public at a later date.  Id.

In this case, if the Court applies either of the two approaches outlined above, Plaintiff's causes of action would remain viable.  Under the <u>Dominak</u> approach, Plaintiff could choose any publication that took place after January 11, 2012, when the Arrest Allegations became false. Under the <u>Winrod</u> approach, Defendants may be liable for publications after January 11, 2012, as Defendants may be deemed to have voluntarily chosen to make the Arrest Allegations available to the public by allowing the Arrest Allegations to remain on their websites, or by refusing to take it down when Plaintiff requested.  Ultimately, adopting either approach would warrant a denial of Defendants' Motion.

**C.  Pursuant to the Republication Exception, The Court May Deem Publication to Have Taken Place After Defendants' Refusal to Remove the Arrest Allegation.**

Even if the Court were to apply the single publication rule in the manner advocated by Defendants, pursuant to the republication exception, the Court may still deem the Arrest Allegations to have been published when Plaintiff requested that the Arrest Allegations be removed.

Under the republication exception to the single publication rule, a publisher may be deemed under certain circumstances to have retriggered the original publication, thus giving rise to a new publication upon which a plaintiff may base her action.  <u>Firth</u>, 775 N.E.2d at 466 (N.Y. 2002).  This occurs, when on a different occasion, a publication is made which is "not merely a delayed circulation of the original…"  <u>Id.</u> (citations and quotes omitted).  While courts have not precisely defined what types of actions give rise to publications which fall within this exception, it is well-established that it is properly applied in circumstances where a "publication is intended to and actually reaches a new audience."  <u>Id.</u>

Turning to the present case, the issue is whether Defendants made a new publication of the Arrest Allegations, and whether that publication was made under circumstances where it can be concluded that it was intended to and did reach a new audience.

According to the Restatement, a publication is considered to have been made where one "intentionally and unreasonably fails to remove defamatory matter that he knows to be exhibited on…chattels in his possession or under his control…"  Restatement (Second) of Torts, § 577(2).  Further, a website has been deemed to be a chattel when applying traditional common law concepts to the internet.  See e.g., EBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000) (deeming a website a chattel in action for trespass to chattels for alleged unauthorized retrieval of information from a website); Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 436-39 (2nd Cir. 2001).

In this case, Defendants refusal to remove the Arrest Allegations from their website should be deemed to be a publication, as: (i) they owned and controlled the websites on which the Arrest Allegations were published (Am. Compl. ¶¶ 8,9, 12,13, 15, 16), (ii) they were made aware of the falsity of the Arrest Allegations when Plaintiff requested that they be removed (id. at ¶ 26), and (iii) they actually refused to remove the Arrest Allegations after being made aware of their falsity (id. at ¶ 27).

Moreover, discovery will likely reveal that this publication was made under circumstances that bring it within the republication exception, as common sense suggests that this publication was intended to reach a new and different audience.   When the Arrest Allegations were first published, they were intended to reach an audience that wishes to read about current events in their community.  On the other hand, when Defendants refused to remove the Arrest Allegations two years later, it cannot be said that they were intending to reach people

who were seeking to read about current events.  Rather, Defendants chose to keep the Arrest Allegations on their website to make it available for people who want that type of information for different purposes, such as, for background checks, gossip, or (in the worst case) to gather "dirt" about a person to attack their character.  In addition, discovery related to the advertising content and revenue generated from internet "page views" of the Arrest Allegations on each of Defendants' websites would also be relevant to this issue, as Plaintiff argues that Defendants are posting new online advertisements on the internet pages that post the Arrest Allegations for the purpose of commercially profiting from the continued publication and reaching new audiences.

In sum, based upon the allegations of the Complaint, it is reasonable to conclude that Defendants refusal to remove the Arrest Allegations constituted a publication.  Further, while it is possible that discovery may tell a different tale, it is reasonably likely that circumstances could be revealed which place this publication within the republication exception.  Accordingly, Defendants' Motion should be denied.

## III.   PURSUANT TO THE ERASURE STATUTE, THE ARREST ALLEGATIONS SHOULD BE CONSIDERED FALSE AS OF THE DATE OF DISMISSAL.

Assuming that Plaintiff's claims may properly be based on publications taking place on or after January 11, 2012, the next issue for consideration is whether the Arrest Allegations can be deemed false by virtue of the arrest being erased pursuant to Connecticut's Erasure Statute.

Defendants argue that the Erasure Statute does not impose "retroactive liability" for the previously published Arrest Allegations.  Defendants' argument misses the mark.  Plaintiff is not seeking to impose retroactive liability.  Rather, Plaintiff submits that the Arrest Allegations became false on January 11, 2012 by virtue of the Erasure Statute when her charges were dismissed.  Further, contrary to what Defendants argue, deeming the Arrest Allegations false as

14

of the date of dismissal for the purpose of defamation claims is appropriate under Connecticut law, and common law principles of defamation.

The relevant provisions of the Erasure Statute, C.G.S. § 54-142a, are the following:

(a) Whenever in any criminal case…the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased…

(e)(3) Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.

The purpose of the Erasure statute is "to protect innocent persons from the harmful consequences of a *criminal charge* which is subsequently dismissed."  State v. Morowitz, 200 Conn. 440, 512 A.2d 175, 182 (1986) (citations and quotations omitted) (emphasis supplied).  In Morowitz, our State Supreme Court articulated a critical analysis of this statute that weighs heavily on the present case:  once the Erasure Statute is applied, Connecticut divides information pertaining to the erased charges into two categories: (1) information derived from personal knowledge concerning the underlying facts of the alleged arrest, and (2) information derived from the erased records concerning the alleged arrest, and proceedings related to the dismissed charges.  Id. at 181.

As articulated in Morowitz, Connecticut courts maintain that the Erasure Statute does not prohibit references or statements concerning information derived from personal knowledge of the underlying facts.  Id.  However, as to information derived solely from erased records which concern the alleged arrest, and proceedings related to the dismissed charge, Connecticut courts plainly prohibit any reference thereto, as the Erasure Statute insulates "such individual from the consequences of the prior *prosecution*."  Id. at 181-82.

While Connecticut courts have not yet confronted the issue of whether publications concerning erased charges, which are not based upon personal knowledge, may be deemed false

15

for the purpose civil actions, a Washington state appellate court has decided the issue.  In Lamon v. Butler, 44 Wash. App. 654 (Wash. 1986), a similar case to the one currently before the Court, the Court of Appeals of Washington concluded that voided arrest records may support a claim for defamation.  The plaintiff in Lamon was convicted of assault, and later appealed.  Id. at 656.  Her conviction was overturned on appeal, and was eventually dismissed.  Id.  Subsequent to the dismissal, a newspaper published that the plaintiff had been convicted of assault, and made no mention of the fact that her conviction was dismissed on appeal.  Id. at 657.

Based upon these facts, the court held that the publication, although once true, became false once the plaintiff's conviction was dismissed and overturned.  Id. at 659.  The court further held that because truth is judged at the time of publication, the statements at issue were in fact false, and could support a claim for defamation.  Id.  The court noted that "although, as a matter of 'historical fact,' [the plaintiff] was convicted of assault, as a matter of 'legal fact,' the conviction, having been reversed was voided."   The court went on to note that "[t]o find otherwise would yield harsh results for defamation plaintiffs.  For example, a person who is arrested erroneously, based on mistaken identity, thereafter should not be subject to media reports citing his arrest while ignoring his subsequent vindication.  *The test of truth cannot ignore the test of time*."  Id. (emphasis added).

In this case, the Arrest Allegations are derived strictly from records that were erased, and concern only the erased charges and details of the dismissed proceedings.  As such, they are plainly within the category of information that the Connecticut Supreme Court has held cannot be referenced once dismissed.  Thus, it is apparent that Connecticut, just like the court in Butler, views this information as false as a matter of "legal fact" once it is erased.  It follows then, that

publications based on these erased facts, which are published after the record is erased, are false at the time that they are published and may support a cause of action for defamation.

Moreover, the cases Defendants cite in support of their argument do not prohibit the Court from reaching this conclusion under Connecticut law, as they contain critical distinctions which render them inapposite.  For example, the statute at issue in <u>Bahr v. Statesman Journal Co.</u>, 51 Or. App. 177, 624 P.2d 664, 665 (Or. Ct. App. 1981), specifically contained an exception to allow use of erased records "[f]or purposes of any civil action in which truth is an element of a cause of action or affirmative defense…"  Likewise, the statute at issue in <u>G.D. v. Kenny</u>, 205 N.J. 275, 15 A.3d 300, 312 (N.J. 2011), specifically allows access to erased records in "instances where the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings."  Connecticut's Erasure Statute, on the other hand, contains no such exception, and as such, cannot be read to include one.

Further, contrary to Defendants' argument, the legislative history of Connecticut's Erasure Statute does not convey an intention to prohibit common law causes of action based upon erased records.  The off-the-cuff remarks cited by Defendants certainly do not convey such an intention.[6]  First, those remarks were made during a hearing concerning an amendment to the Erasure Statute which sought to change the way records are handled in cases where a person has some, but not all, counts dismissed.  (Ex. B at 2)  That is not the situation in this case, as *all* of Plaintiff's alleged charges were in fact dismissed and erased.

In addition, those remarks in no way indicate that the Erasure Statute is intended to prohibit common law claims based upon erased records.  To the contrary, the only conclusion that can be drawn is that the Erasure Statute was not itself intended to impose an obligation upon

---

[6] For the Court's convenience, Plaintiff has reproduced relevant portions of the House Transcript cited by Defendants in their Memorandum.  Said reproduction is attached hereto as **Exhibit B**.

private individuals to erase and/or update their records. That does not mean, though, that the common law cannot. Ultimately, a review of the legislative history of the Erasure Statute reveals, at most, ambiguity on the topic of the use of erased records in a case like this.

In sum, consistent with the purpose of the Erasure Statute, the broadness of its language, and the Connecticut Supreme Court's explicit prohibition of referencing information like the Arrest Allegations once they are erased, the Arrest Allegations can be deemed false as of January 11, 2012 when they were erased by operation of law. Accordingly, Defendants' Motion should be denied.[7]

## IV.   DEFENDANTS' REMAINING ARGUMENTS ARE UNAVAILING

Defendants' remaining arguments are unavailing and will be addressed in turn. First, Defendants argue that Plaintiff has failed to allege that Defendants published false statements. However, as set forth above, Plaintiff can in fact substantiate the allegation set forth in Paragraph 24 of the Complaint which states that as of January 11, 2012, the Arrest Allegations were false.

Next, Defendants argue that Plaintiffs have failed to allege that the Arrest Allegations do not fall within the fair reporting privilege. However, the fair reporting privilege is an affirmative defense, and as such, Plaintiff is not required to address it in her pleadings, particularly given that Defendants have yet to even Answer the Complaint. See e.g., Doctor's Assocs., Inc. v. QIP Holder, LLC, No. 3:06-cv-1710(VLB), 2007 WL 1186026, at *2 (D. Conn. 2007) (Bryant, J.) ("[a]s the parties are not required to plead around affirmative defenses, such an affirmative defense is generally not fodder for a Rule 12(b)(6) motion." (quoting Novak v. Overture Servs.,

---

[7] Plaintiff maintains that the Arrest Allegations may be deemed false for purposes of common law claims under Connecticut law. However, to the extent this Court believes that Connecticut law is not clear on this issue, Plaintiff respectfully requests that the issue be certified to the Connecticut Supreme Court for resolution given the lack of controlling authority on the issue, and given that the answer would be determinative to a material issue in this litigation. C.G.S. § 51-199b(d).

<u>Inc.</u>, 309 F.Supp.2d 446, 452 (E.D.N.Y.2004)).   Beyond that, though, Plaintiff has alleged sufficient facts to defeat that affirmative defense, as she has alleged that as of January 11, 2012, all subsequent publications of the Arrest Allegations were in fact false.  (Am. Compl. ¶ 24).

Defendants also argue that Plaintiff has failed to allege any degree of fault on the part of the Defendants.  This argument ignores Plaintiff's allegation in Paragraph 38 of the Complaint, which specifically alleges that "Defendants each respectively published the…Defamatory Statements with knowledge of their falsity or reckless disregard of the truth of such statements." <u>Id.</u> at ¶ 38.  Regardless, fault on the part of Defendants can be inferred from the allegation that they refused to remove the Arrest Allegations after being put on notice of their falsity.  <u>Id.</u> at ¶¶ 26-27.

Defendants further argue that Plaintiff's claim for negligent infliction of emotional distress ("NIED") should be dismissed because publication of a true newsworthy article cannot create an unreasonable risk of emotional distress.  However, as shown above, the publication at issue was in fact false as of January 11, 2012, and thus can properly support a claim for NIED.

Next, Defendants argue that Plaintiff's NIED claim should be dismissed because she has not alleged that the emotional distress has resulted in bodily harm.  This argument misstates the law of NIED in Connecticut and ignores the host of physical manifestations that are listed in Paragraph 52 of Plaintiff's Complaint.  First, Connecticut law does not require that a plaintiff allege actual physical injury.  <u>Montinieri v. Southern New England Tel. Co.</u>, 175 Conn. 337, 398 A.2d 1180, 1184 (1978) ("we hold that recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact.").  Rather, a plaintiff must only allege the emotional distress is severe enough that it *might* result in illness or bodily harm.  <u>See</u> <u>e.g.</u>, <u>Witt v. Yale-New Haven Hosp.</u>. 51 Conn.Supp.

155, 977 A.2d 779, 784 (Conn. Super. Sept. 30, 2008).   Further, symptoms such as sleep disturbances, nightmares, headaches and depression are recognized as sufficient physical symptoms for purposes of an NIED claim.  See id., at 788.

In this case, Plaintiff has alleged that she has experienced "severe mental and emotional distress, manifested by symptoms reasonably likely to occur to someone in Plaintiff's position, such as: anxiety, paranoia, anger, anguish, *insomnia*, nervousness, *headache*, and *depression*." (Am. Compl. ¶ 52) (emphasis added).  As the foregoing shows, this allegation clearly meets legal muster under Connecticut law.

Next, Defendants argue that her false light and misappropriation claims should be dismissed because the Arrest Allegations were true.  However, as set forth above, the Arrest Allegations may properly be deemed false, and thus, are sufficient to support these claims.

Defendants' final argument is that the First Amendment bars the application of retroactive liability.   However, as clarified in this Memorandum, Plaintiff is not seeking retroactive liability, but rather, seeks to hold Defendants responsible for continuing to publish the Arrest Allegations once they became false.

Accordingly, Defendants' Motion on these grounds must be denied.

## CONCLUSION

In sum, in enacting the Erasure Statute, the Connecticut legislature told Plaintiff that she could move forward in her life from her dismissed arrest, without carrying with her the scarlet taint of the Arrest Allegations.  Defendants have not allowed her to do that, and justice dictates that she should be able to seek recourse.  As the foregoing shows, although Plaintiff's claims are novel, they would have inevitably found themselves through the courthouse doors, as common law must keep pace with the perils and pitfalls of the internet.  Plaintiff's claims are based upon

sound legal theory and supported by public policy, and as such, she should be allowed to pursue her claims.  Regardless, Defendants have failed to show that her claims warrant dismissal.

Accordingly, for the reasons set forth herein, and upon oral argument of this matter, Defendants' Motion should be denied.

THE PLAINTIFF,

By:_____
Ryan O'Neill, Esq. (ct28345)
Mark Sherman, Esq. (ct 26793)
The Law Officers of Mark Sherman, LLC.
29 Fifth Street
Stamford, CT 06905
Tel: (203) 324-2296
Fax: (203) 348-7313
Email: ryan@markshermanlaw.com

## CERTIFICATION OF SERVICE

I, RYAN O'NEILL ESQUIRE, hereby certify that on September 19, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


By _____
Ryan O'Neill, Esq. (ct28345)
LAW OFFICES OF MARK SHERMAN, LLC
29 Fifth Street
Stamford, CT  06905
(203) 358-4700
ryan@markshermanlaw.com

22