IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORRAINE MARTIN, individually and on Behalf of all Others Similarly Situated,<br><br>      Plaintiff,<br><br>-v-<br><br>HEARST CORPORATION, MAIN STREET CONNECT, LLC, d/b/a THE DAILY GREENWICH, and NEWS 12 INTERACTIVE, INC.,<br><br>      Defendants. | Case No. 3:12-cv-01023 (JBA) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS ON BEHALF OF DEFENDANTS
<u>HEARST CORPORATION AND NEWS 12 INTERACTIVE</u>**

Cameron Stracher (ct28146)
4 North Pasture Rd.
Westport, CT 06880
Phone / Fax: (203) 222-7169
Email: cam@stracherlaw.com

*Attorney for Defendants The Hearst
Corporation and News12 Interactive LLC*

**PRELIMINARY STATEMENT**

Plaintiff's opposition makes plain that Lorraine Martin has no claim for libel based on any legal theory ever accepted by any court in Connecticut, or any other state. Plaintiff concedes that the news reports she now challenges were entirely true when published, that defendants' reports about the official actions of Connecticut police and prosecutors were subject to an absolute common law privilege against liability, and that defendants did not act with any degree of fault in publishing true, newsworthy information. Under settled law, plaintiff has no claim.

The opposition instead argues that liability was somehow retroactively created under Connecticut's Erasure Statute, and advances several novel theories about how this Court might reach that conclusion. Plaintiff's effort is entirely misdirected—based upon a misreading of the statute, misuse of case law, and misapplication of common law principles. The plain language of the Erasure Statute imposes no duty on the press; the legislative history expressly *disavows* creation of the very press liability now urged by plaintiff; and, if the statute had actually imposed an obligation on the press to erase its true reports of newsworthy events, the statute manifestly would violate the First Amendment. None of plaintiff's overreaching theories is correct, and her complaint should promptly be dismissed.

**ARGUMENT**

**I.**
**THE LAWS OF CONNECTICUT DO NOT IMPOSE THE**
**RETROACTIVE LIABILITY ALLEGED IN THE COMPLAINT**

A.  **The Connecticut Erasure Statute Imposes**
    **No Duty on the Press to "Erase" History**

As previously demonstrated, neither the literal language of the Erasure statute nor its legislative history in any way support extending its duties and liabilities to a non-governmental party. (Def. Mem. 6-7). The statute imposes restrictions only upon "police and court records"

and records of the prosecuting attorney or grand jury.  Conn. Gen. Stat. 54-142a.  It does not impose any duty on the press to withdraw their past reporting or to re-write history.  Nor is this limitation accidental.  The legislature intended and understood that the law would impose "no obligation on anyone who is not in the government to destroy information that they have lawfully in their possession."  Conn. House Transcript, May 6, 2008, available via search at http://search.cga.state.ct.us/dtSearch_lpa.html; *see Manchester Sand and Gravel Co. v. Town of S. Windsor*, 524 A.2d 621, 626 (1987) (statements on the floor of the house, "although not controlling . . . are a strong indication of legislative intent").

Plaintiff dismisses the clear statement of Representative Lawlor as merely "off-the-cuff" comments about an amendment (Opp. at 17), but as the principal sponsor of the substantive amendments to the Erasure Statute enacted in 2008, his statement deserves particular attention. *Conn. Ass'n of Not-for-Profit Providers for the Aging v. Dep't of Soc. Servs.*, 709 A.2d 1116, 1126 & n.22 (1998) (relying on statements of sponsors to confirm legislative understanding of statutory provision); *Doe v. Marselle*, 675 A.2d 835, 838 (1996) (same).  Representative Lawlor also must be presumed to understand how the statute had operated and how the amendments would cause it to operate going forward.  *See New Haven Water Co. v. Town of N. Banford*, 392 A.2d 456, 460 (1978) (legislature "always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them") (internal marks and citation omitted); *Linden Condo. Ass'n, Inc. v. McKenna*, 726 A.2d 502, 507 (1999) ("we presume that the legislature intends sensible results from the statutes it enacts").  *See also Perille v. Raysbestos-Manhattan-Europe, Inc.*, 494 A.2d 555, 562 (1985) ("a subsequent legislative act 'may throw light on the legislative intent of a former related act.'") (citation omitted).

Moreover, Representative Lawlor's comment was not actually an ill-considered, one-off comment as plaintiff portrays it. During the debate on the Joint Committee's report and passage of the amendment, Representative Lawlor repeated the understanding that:

> I believe that, on a regular basis, at least one of the state's major newspapers buys the Judicial Branch database of all pending cases and all that comes with civil and criminal cases. They have those records. ***They are under no obligation to erase them because they're public at the time they obtain them.***

Conn. House Tr., May 7, 2008, available via search at

http://search.cga.state.ct.us/dtSearch_lpa.html (emphasis added). This view fully comports with the judicial understanding of the scope of the statute before its 2008 amendment. As a Connecticut trial court stated in June 2000:

> The erasure statute operates in the legal sphere, not the historical sphere. That is, the erasure statute is designed to return a person's criminal record to the status quo when that person is found not guilty as a consequence of a final judgment, or a charge is dismissed. ***The erasure statute does not, and could not, purport to wipe from the public record the fact that certain historical events have taken place. Only in a totalitarian system could law purport to have such a sweeping effect.***

*Martin v. Griffin*, 2000 WL 872464, at *12 (Conn. Super. 2000) (emphasis added). The court concluded the "erasure statute is powerless to eradicate from the historical record the fact that plaintiff was arrested" and further held that "a true statement of an historical fact, is not defamatory." *Id.* (citing *Garrison v. Louisiana*, 379 U.S. 64 (1964)). *See also Rado v. Bd. of Educ. of Borough of Naugatuck*, 583 A.2d 102, 107 (Conn. 1990) (Erasure Statute does not extend beyond the records specifically identified, so that use of evidence about an "erased" charge obtained from witness memory or newspaper clipping is not improper).[1]

---

[1] Plaintiff's attempt to distinguish *Bahr v. Statesman Journal, Co.,* 624 P.2d 664 (Or. Ct. App. 1981) and *G.D. v. Kenny,* 15 A.3d 300 (N.J. 2011) because the erasure statutes at issue in those cases contained exceptions for use in litigation is irrelevant to the right of the *press* to truthfully report on matters of public concern. (Opp. 17).

3

**B.     The Common Law of Connecticut Does Not Permit the
        Type of Post-Publication Liability Asserted by Plaintiff**

Even if the Erasure Statute could somehow be read to "deem" plaintiff's arrest never to have occurred (which it cannot), plaintiff is equally off-base in arguing that this legal fiction would somehow create a claim for libel based on news reports published before the "erasure." As shown, the only act of publication by defendants was their original publication of true, privileged news reports about plaintiff's arrest, and the single publication rule bars a new claim predicated on Connecticut's later act in sealing its arrest records. (Def. Mem. 5-6).

**1.     Connecticut courts follow the single publication rule**

Contrary to plaintiff's contention, the only courts in Connecticut ever to consider the applicability of the single publication rule have fully embraced it. *See Hechtman v. Conn. Dep't of Pub. Health,* 2009 WL 5303796, at *10 (Conn. Super. 2009) (adopting single publication rule); *Fouts v. Fawcett Publ'ns, Inc.,* 116 F. Supp. 535, 537 (D. Conn. 1953) (predicting Connecticut would follow single publication rule). In *Cweklinsky v. Mobil Chemical Co.*, mistakenly relied upon by plaintiff (Opp. 7-8), the single publication rule was not at issue, and therefore, the Connecticut Supreme Court did ***not*** address it. The Court merely applied the traditional multiple publication rule in an employment case, while holding that Connecticut does not recognize a claim for defamation based on a former employee's compelled self-publication of an employer's defamatory statement. 837 A.2d 759 (Conn. 2004). The only relevant Connecticut law applies the single publication rule.[2]

---

[2] Virtually all other states expressly follow the single publication rule. Rest. (2d) Torts § 577A, Reporter's Note (2011) (citing cases).

2.  **Under the single publication rule, statements posted on the Internet are "published" on the date of their posting.**

Every state court that has considered the issue of Internet publication, including Connecticut, has held that "defamatory statements posted on the Internet are considered published on the date they are initially posted and not every time a third party views the statements." *Hechtman,* 2009 WL 5303796, at *10 (citing cases).  Plaintiff cites no authority holding otherwise and we are aware of none.  Plaintiff contends nonetheless that the "proper" application of the single publication rule should allow her to choose "any individual publication [sic] as the date of publication for the one and only cause of action to which she is entitled." (Opp. 9).  This contention is contrary to every decision applying the single publication rule to the Internet, and the two pre-Internet cases plaintiff relies upon have since been expressly overruled.

In *Dominak v. National Enquirer,* the Pennsylvania Supreme Court held only that the date of the first *statewide* publication, rather than the first *nationwide* publication, triggered the statute of limitations under the single publication rule.  266 A.2d 626, 631 (Pa. 1970).  Subsequently, the court rejected this principle:  "If a newspaper publishes an article with a national circulation, the newspaper will be responsible only for the original publication because the original publication of the defamatory material is the tortious conduct to be discouraged." *Graham v. Today's Spirit,* 468 A.2d 454, 457 (Pa. 1983).  As more recently stated in *Andrews v. Time, Inc.*, 690 F. Supp. 362, 366 (E.D. Pa. 1988), *Graham* "makes it clear that a plaintiff may not just choose any publication of the allegedly defamatory material to start the running of the statute of limitations."  Plaintiff similarly cites the now-rejected ruling in *Hartman v. American News Co.,* 69 F.Supp. 736 (W.D. Wis. 1947).  Its reasoning was squarely rejected in *Ladd v. Uecker,* 780 N.W.2d 216, 220 (Wis. Ct. App. 2011), which adopted the single publication rule

and rejected the "notion that each 'hit' or viewing of the information [on the Internet] should be considered a new publication that retriggers the statute of limitations."

Again, the holding of the federal district court in *Winrod v. McFadden Publications,* 62 F. Supp. 249 (N.D. Ill. 1945), cited by plaintiff (Opp. 10-11), in which the court applied Illinois law, was explicitly rejected two years later by the Illinois court of appeals. *See Winrod v. Time, Inc.,* 78 N.E.2d 708, 714 (Ill. App. Ct. 1948) (holding that release of subsequent copies of the same publication does not constitute a new publication). Moreover, Illinois law is clear that "the subsequent distribution of existing copies of an original publication neither creates a fresh cause of action nor tolls the applicable statute of limitations." *Founding Church of Scientology of Washington, D.C. v. Am. Med. Ass'n,* 377 N.E.2d 158, 160 (Ill. Ct. App. 1978).

### 3.    The refusal to remove material posted on the Internet does not constitute "republication."

No court in the United States has ever adopted plaintiff's argument that the failure to retract an allegedly defamatory publication constitutes a new publication, and *every* court that has addressed the argument has rejected it. *See Roberts v. McAfee, Inc.,* 660 F.3d 1156, 1111 (9th Cir. 2011) (citing cases). Indeed, both Connecticut and the Ninth Circuit have expressly rejected plaintiff's argument that the failure "'to remove defamatory matter that [defendants know] to be exhibited on . . . chattels in [their] possession or under [their] control. . . .'" constitutes a new publication. (Opp. 13) (quoting Restatement (Second) of Torts § 577(2)) (ellipses in original). As the Connecticut appellate court noted, § 577(2) only imposes "liability on the owner of property who refuses to remove defamatory writings placed on that property by a *third* party." *Hechtman,* 2009 WL 5303796, at *11 (emphasis added). It does not "address the

definition of republication, [nor does it] address the single publication rule at all."[3]  *Roberts,* 660 F.3d at 1168.

In short, there is no legal support for plaintiff's novel theories; they repeatedly have been rejected.  The single publication rule bars plaintiff's claims.

## II.
## THE FIRST AMENDMENT BARS LIABILTY FOR THE TRUE, NEWSWORTHY REPORTS CHALLENGED BY PLAINTIFF

Plaintiff's opposition conspicuously fails to address defendants' First Amendment arguments.  (Def. Mem. 12-14).  The reason is plain.  Even if one accepted her novel defamation claim, the First Amendment presents an insurmountable bar.  Application of the Erasure Statute as she suggests, to enable punishment of accurate reports about official government actions, would clearly violate the Constitution.  The Supreme Court repeatedly has held that liability cannot be imposed upon accurate speech about matters of public record or public concern consistent with the First Amendment, no matter how significant the competing privacy interests may be.  In each case where the issue has been raised, the Court has struck down statutory liability applied to true press reports.  And in each case, discussed below, the privacy interests asserted were at least as significant as the reputational interests claimed here.  Thus, the First Amendment also bars plaintiff's claim.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Court reversed a civil damages award entered against a newspaper for publishing the name of a rape victim in the paper's "police blotter" section in violation of a state statute designed to protect victims' privacy.  The Court held the statute unconstitutional as applied because the victim's name was part of an official police report that had been left in the press room.  The Court relied on a series of prior rulings

---

[3] In fact, it is section 577A, not section 577(2), which sets forth the definition of the single publication rule.  Rest. (2d) Torts § 577A.

that "without exception upheld the press' right to publish" in similar circumstances. *See id*. at 530, (citing *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975) (holding that damages could not be recovered against a newspaper for publishing name of a rape victim in violation of a state statute where the name was listed in court records, ruling the statute unconstitutional); *Okla. Publ'g Co. v. Okla. Cnty. Dist. Court*, 430 U.S. 308 (1975) (holding unconstitutional a state court's pretrial order enjoining the media from publishing the name or photograph of an 11-year-old boy being tried in juvenile court, which was open to public); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) (holding unconstitutional the indictment of two newspapers for violating a state statute forbidding newspapers from publishing the names of youths charged as juvenile offenders without court approval)). In yet another case, *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978), the Supreme Court again invalidated a state statute prohibiting the press from publishing an accurate account of official action, in that case confidential proceedings before a state judicial review commission. The Court held that the law violated the First Amendment, notwithstanding the secret nature of the confidential proceedings mandated by law, which were entirely absent from public view. The dispositive fact was that the proceedings constituted official action and no statute could punish the press for accurately reporting such action.[4]

This unbroken line of precedent makes clear that legislation requiring secrecy about official actions or proceedings cannot be used to punish the press for true reporting without running afoul of the First Amendment. The Erasure Statute is no different – it cannot be used to punish the publication of accurate reports about arrests, even if the statute can otherwise remove

---

[4] More recently, in *Bartnicki v. Vopper*, 532 U.S. 514, 533-34 (2001), applying similar reasoning, the Supreme Court held that a radio station could not be punished for broadcasting a taped conversation in violation of a state wiretapping statute consistent with the First Amendment where the information on the tape involved a matter of public concern and the station had done nothing illegal in obtaining it.

those official actions from the public eye. And surely the Erasure Statute cannot rewrite history where the First Amendment is concerned. In *B.J.F.* the Court made clear that "once the truthful information was publicly revealed or in the public domain the court could not constitutionally restrain its dissemination." *B.J.F.*, 491 U.S. at 535 (internal citations and quotation marks omitted).[5] Here, as in *B.J.F.*, the information plaintiff seeks to prevent from dissemination has already been publicly revealed by the government. As *B.J.F.* makes clear, the genie cannot be put back in the bottle, at least outside the realm of the government: "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." Id. at 534.

Plaintiff's theory fails for several other fundamental reasons. First, it would mean that anyone who speaks or writes about erased arrests would be subject to liability, making common conversation about civic matters unlawful, an untenable result. On the other hand, if plaintiff proposes a distinction by which only media entities could be liable, she is precluded by the First Amendment, which requires evenhanded application of speech restrictions. *See B.J.F.*, 491 U.S. at 540 ( "When a State attempts the extraordinary measure of punishing truthful publication in the name of privacy, it must demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly, to the smalltime disseminator as well as the media giant.").

Second, it would deter the media from publishing information about arrests that might later become subject to the Statute, a severe blow to the press' function to inform the public about government action. *See, e.g., B.J.F.*, 491 U.S. at 535-36. Because publishers with no

---

[5] Indeed, this is consistent with the reading of the Erasure Statute by the court in *State v. Morowitz*, a case relied on by plaintiff (Opp. at 15-17). The *Morowitz* court noted that "[t]here is no reference in the [Erasure Statute] to disclosures by private parties or to matters extraneous to the records themselves," and the Connecticut Supreme Court has refused "to extend the strictures of § 54–142a beyond the classes of documents and individuals denominated therein." 512 A.2d 175, 181 (1986).

knowledge of an erasure could be held liable under plaintiff's theory, they would be left to choose between the burden of policing their accurate reports for later erasures or to forego publication in the first place.  Finally, plaintiff's claim that she may require a newspaper to remove content it has deemed newsworthy and part of its archives cannot be reconciled with First Amendment protection for editorial decision-making.  *See, e.g.*, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Worse still, the result plaintiff seeks would deny the public critical historical information needed for democratic oversight of police and prosecutors.  Reports of arrests – whether resulting in charges or not – are of legitimate concern to the public because they shed light on what the police department has been doing and how prosecutors are exercising their discretion.  Removing such reports from public view would severely undermine the public accountability of our law enforcement officials.

In sum, the First Amendment is an absolute bar to plaintiffs novel theory.  Her suit is premised on an unconstitutional interpretation of the Erasure Statute, and it should be dismissed for this reason as well.[6]

---

[6] Because plaintiff here fails to state a claim, the issue of class certification is mooted. *Comer v. Cisneros,* 37 F.3d 775, (2d Cir. 1994).

## CONCLUSION

For each and all the foregoing reasons, and for the reasons stated in defendants' initial motion papers, plaintiff's Amended Complaint should be dismissed with prejudice.

Dated: December 10, 2012                    Respectfully submitted,

                                            /s/ Cameron Stracher
                                            Cameron Stracher (ct28146)
                                            4 North Pasture Rd.
                                            Westport, CT 06880
                                            Phone / Fax: (203) 222-7169
                                            Email: cam@stracherlaw.com

                                            *Attorney for Defendants The Hearst Corporation and News 12 Interactive LLC*