UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LORRAINE MARTIN, individually and on behalf of all others similarly situated,
    Plaintiff,
    v.
HEARST CORPORATION, MAIN STREET CONNECT, LLC, and NEWS 12 INTERACTIVE, INC.,
    Defendants.

No. 3:12cv1023 (MPS)

**RULING AND ORDER**

      Plaintiff Lorraine Martin was arrested in 2010. At the time, local media outlets ran articles on news websites and in print accurately reporting that she was arrested. She now sues the owners of those media outlets, claiming that "on or after January 11, 2012" the articles detailing her arrest – which remained available online – became defamatory because, as of that date, Ms. Martin "was deemed never to have never been arrested" due to the dismissal of the criminal charges against her and the operation of the "deemer" provision of Connecticut's erasure laws. *See* Conn. Gen. Stat. § 54-142a(e)(3) ("Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested…."); (Am. Compl. [Dkt. # 20] ¶ 37.) Based in large part on her interpretation of that provision, Ms. Martin brings a four-count Amended Complaint [Dkt. # 20] alleging libel, publicity placing her in a false light, negligent infliction of emotional distress ("NIED"), and invasion of privacy. (*Id.* ¶¶ 35-57.) The Defendant media outlets – Hearst Corporation ("Hearst"), News 12 Interactive ("News 12") and Main Street Connect, LLC ("Main Street") – have filed motions to dismiss, which the Court treats as motions for summary judgment under Federal Rule of Civil Procedure 12(d).[1] Because

---

[1] Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to

the "deemer" provision of Connecticut's erasure laws does not alter the historical fact that Ms. Martin was arrested, there is no genuine dispute that the reports of her 2010 arrest in the articles at issue remain as true now as on the date they were first published. All four of Ms. Martin's state-law torts founder on the truth of what Defendants have published, and Defendants are entitled to judgment as a matter of law.

## I.     Factual Background

The following facts are taken from Ms. Martin's Amended Complaint, the exhibits to the Declaration of Cameron Stracher [Dkt. # 50], and the Affidavit of Mark Sherman [Dkt. # 57].[2] The Court presents all facts "in the light most favorable to the nonmoving party"—here, Plaintiff—after drawing "all reasonable inferences in [her] favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted).

---

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Defendants' motions to dismiss were premised, in part, on the supposed truthfulness of the articles in question when they were published, a claim that was outside the scope of the operative complaint. As a result, the Court issued the following order on May 6, 2013: "The Court believes that the pending motions turn on the issue whether the published statements were true at the time they were published, i.e., in 2010. As it appears from the parties' briefing that there is no genuine dispute that the statements were true in 2010, and as this issue is not one for which discovery will likely be beneficial, the Court will treat the pending motions as motions for summary judgment under Rule 12(d). By **May 27, 2013**, Defendants shall file copies of the relevant articles and other published statements to the docket, and Plaintiff shall file a notice indicating whether she believes that the contents of the articles were false at the time they were published, and, if so, the factual basis for her contention. Any party is free to submit by May 27, 2013 any other material that might be pertinent to the motions." (Order [Dkt. # 48].) In response to this order, Defendants filed copies of the relevant articles, and Plaintiff filed an affidavit acknowledging that the contents of the articles were true at the time they were first published. [Dkt. ## 50, 57.]

[2] Allegations in Ms. Martin's Amended Complaint are judicial admissions of fact throughout this proceeding. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("The allegations in the [operative complaint] are judicial admissions by which [the plaintiff] was bound throughout the course of the proceeding." (internal quotation marks and alteration omitted)).

On August 20, 2010, Ms. Martin was arrested—along with her two sons—after police executed a search warrant and reported that they found her with drugs. (Ex. A to Stracher Decl.; Sherman Aff. ¶ 3.) She was charged with possession of narcotics, possession of drug paraphernalia, and possession of a controlled substance. (Ex. A to Stracher Decl.; Sherman Aff. ¶ 3.)

Shortly thereafter, Defendants published brief accounts describing Ms. Martin's arrest. On August 25, 2010, Main Street published an article on www.thedailygreenwich.com that reported that Ms. Martin was "charged with possession of narcotics, possession of drug paraphernalia and possession of marijuana. She was released after posting a $1,000 bond and is due in court Aug. 27." (Am. Compl. ¶ 19.) On August 26, 2010, *The Connecticut Post*, *The Stamford Advocate*, and *The Greenwich Time*—all owned by Hearst—published articles in print and online, reporting that Ms. Martin was "arrested and charged with numerous drug violations Aug. 20 after police received information that a pair of brothers were selling marijuana in town." (*Id.* ¶¶ 8, 17; Exs. A-C to Stracher Decl.) On August 27, 2010, News 12 published an online article reporting that Ms. Martin was "arrested on Aug. 20 after police say they confiscated 12 grams of marijuana, scales and trace of cocaine from their house." (Am. Compl. ¶ 21; Ex. D to Stracher Decl.) These stories about Ms. Martin's arrest remain available online. (Am. Compl. ¶¶ 18, 20, 22.)[3]

---

[3] Ms. Martin also alleges that "[s]ince January 11, 2012, Defendants' respective online publications . . . were, and continue to be, false and defamatory." (Am. Compl. ¶ 24) In light of Ms. Martin's acknowledgement that the statements were true when written (*see* Sherman Aff. ¶ 3), however, the allegation contained in paragraph 24 reveals itself to be a legal *conclusion* rather than an allegation of fact; that is, Ms. Martin is asserting that statements that were once true have become false by operation of the "deemer" provision of Connecticut's erasure laws. (*See* Pl.'s Opp'n [Dkt. # 38] at 14-18.)

After requesting that Defendants remove the articles referring to her arrest, and after Defendants declined to do so, Ms. Martin initiated this action. (*See id.* ¶¶ 26-27.)

## II. Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving parties—here, Defendants—bear the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. . . ." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (internal quotation marks omitted).

If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

## III. Discussion

### A. Connecticut's Erasure Laws

Ms. Martin's claims are premised on her contention that Defendants' statements concerning her arrest "became false on January 11, 2012 by virtue of the Erasure Statute when her charges were dismissed." (Pl.'s Opp'n at 14.) The portion of the erasure laws on which she relies provides as follows:

> (c)(1) Whenever any charge in a criminal case has been nolled in the Superior Court, or in the Court of Common Pleas, if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased . . . .
>
> (e)(3) Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.

Conn. Gen. Stat. § 54-142a. Ms. Martin argues that because she qualified for erasure under subsection (c)(1), subsection (e)(3) mandates that she "be deemed to have been never arrested" as a matter of historical fact, rendering false any statements to the contrary and exposing the publishers of such statements to liability. That is not a sensible reading of the statute. It is also not one that the statute's plain language supports or that basic canons of statutory construction permit.

Connecticut law instructs courts how to construe Connecticut statutes: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Conn. Gen. Stat. § 1-2z; *see Morenz v. Wilson-Coker*, 415 F.3d 230, 236-37 (2d Cir. 2005) ("[W]e are bound to interpret Connecticut law according to Connecticut's own interpretive rules."). The language of subsection (e)(3) on which Ms. Martin relies for her theory that the legislature intended to transform true statements about an arrest into false ones is, on its face, qualified language: "Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested *within the meaning of the general statutes* with respect to the proceedings so erased and may so swear under oath." Conn. Gen. Stat. § 54-142a(e)(3) (emphasis added). Right away,

5

then, the text signals that the legislature had something more modest and more technical in mind than the sweeping, history-altering design perceived by Ms. Martin.  In particular, the legislature meant to relieve those who qualified for erasure from the legal effect of an arrest "within the meaning of the general statutes" and to permit such persons lawfully to deny the fact of the arrest in court and other official proceedings.  Still, because the reference to being arrested "within the meaning of the general statutes" does not cross-reference any particular statute, and because the term "arrested" appears in many places in the Connecticut General Statutes, the precise meaning of the "deemer" provision remains somewhat fuzzy.

A sharper picture emerges, however, when the statute is examined as a whole.  The statute in which subsection (e)(3) appears concerns the records of courts and law enforcement agencies, and imposes requirements on court and law enforcement personnel.  *See* Conn. Gen. Stat. § 54-142a.  The statute, which is entitled "Erasure of criminal records," requires that court records and police and prosecutor records be "erased" following final judgment in a case in which the defendant is acquitted or the charge is dismissed, and in a case in which a "nolle prosequi" is entered.  Conn. Gen. Stat. § 54-142a(a),(b),(c).  The statute treats similarly records of those who have received an "absolute pardon" for the offense.  *Id*. § 54-142a(d).

The statute is addressed to court and law enforcement personnel, i.e., it imposes restrictions on them.  Thus, it prohibits the "clerk of the court or any person charged with retention and control of such records in the records center of the Judicial Department or any law enforcement agency" from disclosing to anyone (except the person whose records have been erased, under certain circumstances) "information pertaining to any charge erased under any provision of this section."  *Id*. § 54-142a(e)(1).  The statute also imposes other requirements on the clerk of the court and the law enforcement agency's records custodian, including that they

provide "adequate security measures to safeguard against unauthorized access to or dissemination of such records" and that they physically destroy the records three years after the disposition of the case upon request of the accused. *Id*. Nothing in the statute, however, suggests any intent to impose requirements on persons who work outside courts or law enforcement agencies, and nothing suggests any intent to mandate the erasure of records held by such persons. Indeed, the statute makes clear that it does not even apply to all court-affiliated personnel or all court records: it expressly does not require the erasure of "a record or transcript of the proceedings made or prepared by an official court reporter, assistant court reporter or monitor." *Id*. § 54-142a(h).[4]

It is also telling that the other "erasure" statutes among which Section 54-142a is situated, which together form Part I, "Erasure", of Chapter 961a of the General Statutes, "Criminal Records," are likewise focused on court and law enforcement records and the people who maintain them. *See* Conn. Gen. Stat. § 1-2z ("The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself *and its relationship to other statutes*." (emphasis added).) For example, Section 54-142c bars court clerks and other custodians of erased records from disclosing the existence or contents of such records to anyone, except for disclosure of the fact of dismissal of the criminal case to the victim of the crime under certain circumstances. Section 54-142d requires courts, upon application, to order the physical destruction of court and law enforcement records of persons whose offenses of conviction have been decriminalized. And Section 54-142e requires the Judicial Department to make available to consumer reporting

---

[4] The statute also creates certain exceptions to the prohibition on disclosure, allowing, for example, the court to order disclosure of "erased" records to "a defendant in an action for false arrest arising out of the proceedings so erased" and to the prosecuting attorney and defense counsel "in connection with any perjury charges" that might have "arisen from the testimony elicited during the trial." *Id*. § 54-142a(f).

7

agencies information concerning erased records, and requires those agencies to delete permanently from their own records any criminal record information of persons qualifying for erasure. The latter requirement is salient, as it is the *only* prohibition on disclosure that the erasure laws impose on persons working *outside* of courts or law enforcement agencies.

This examination of the language of the "deemer" provision and the survey of its surrounding statutory landscape make clear that the legislature adopted that provision and the erasure laws as a whole to ensure that those who maintain the sources of information about criminal records—principally, government employees—treat persons who qualify for erasure as if they have never been arrested. By changing the legal effect of an arrest at its source, and by mandating that those who effectuated and recorded the arrest recognize and implement that change, the legislature apparently sought to minimize the stigma associated with an arrest, to the point of treating persons who qualified for erasure as if they had never been arrested *as a matter of law*, i.e., "within the meaning of the general statutes." But there is no evidence in the text of the statute that the legislature sought to go any further than that—and not the slightest suggestion that it sought to muzzle private persons who might have obtained arrest information (other than the specific reference to consumer reporting agencies—which do not figure in this case) or, for that matter, to change history.

Even if the "deemer" provision were ambiguous on this point, a basic canon of statutory construction would foreclose choosing Ms. Martin's history-altering interpretation. Courts have a "duty to construe statutes, whenever possible, to avoid constitutional infirmities . . . ." *Denardo v. Bergamo*, 272 Conn. 500, 506 n.6 (2005); *see also Honulik v. Town of Greenwich*, 293 Conn. 641, 647 (2009) ("[W]e read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. We will indulge in every presumption in favor of the statute's

constitutionality . . . ."); *accord Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348 (1936) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."). If the "deemer" provision of the erasure laws operated to allow defamation liability to be imposed on true and newsworthy statements, it would run afoul of the First Amendment. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards."); *Fla. Star v. B.J.F.*, 491 U.S. 524, 526 (1989) (holding that First Amendment precluded a suit brought by rape victim against a newspaper for publishing the victim's name, which was obtained from a publicly released police report; "once the truthful information was publicly revealed or in the public domain the court could not constitutionally restrain its dissemination" (internal quotation marks omitted)). Ms. Martin's proposed interpretation would raise serious constitutional questions, and thus even if this Court considered the statute ambiguous, it would construe the statute in a manner that would not expose publishers of historically accurate statements to liability.

This Court is not the first to conclude that the "deemer" provision of Connecticut's erasure laws does not purport to change history. Then-Superior-Court-Judge Douglas Lavine, now of the Connecticut Appellate Court, reached a similar conclusion over a decade ago, in the only reported decision to address this issue. *Martin v. Griffin*, No. CV 990586133S, 2000 WL 872464 (Conn. Super. Ct. June 13, 2000).[5] In *Griffin*, the plaintiff argued that "the statement that

---

[5] The parties cite a few Connecticut Supreme Court cases that address the effect of the erasure laws. *See Rado v. Bd. of Educ.*, 216 Conn. 541 (1990); *Rawling v. City of New Haven*, 206 Conn. 100 (1988); *State v. Morowitz*, 200 Conn. 440 (1986). These cases do not specifically address the question at issue here, i.e., the effect of these laws on the arrest itself for the purposes of defamation, although they do illustrate a further limitation of these laws, which is that they do

9

[he] was arrested is false in its entirety because the arrest 'was deemed never to have occurred' pursuant to . . . Section 54-142a(e)." *Id.* at *12. Judge Lavine succinctly rejected this argument:

> [t]he erasure statute operates in the legal sphere, not the historical sphere. That is, the erasure statute is designed to return a person's criminal record to the status quo when that person is found not guilty as a consequence of a final judgment, or a charge is dismissed. *The erasure statute does not, and could not, purport to wipe from the public record the fact that certain historical events have taken place.* Only in a totalitarian system could law purport to have such a sweeping effect.

*Id.* (emphasis added). Courts construing similar laws of others states have reached similar conclusions. *See, e.g.*, *G.D. v. Kenny*, 15 A.3d 275, 302 (N.J. 2011) (affirming dismissal of claims for defamation, emotional distress, publication of private facts and false light privacy: "[t]he expungement statute does not transmute a once-true fact into a falsehood. It does not require the excision of records from the historical archives of newspapers or bound volumes of reported decisions or a personal diary. It cannot banish memories. It is not intended to create an Orwellian scheme whereby previously public information—long maintained in official records—now becomes beyond the reach of public discourse on penalty of a defamation action."); *Rzeznik v. Chief of Police*, 373 N.E.2d 1128, 1132 (Mass. 1978) (concluding that similar Massachusetts statute did not "purport completely to erase the *fact* of a prior criminal conviction" (emphasis added)).

---

not preclude evidence of the underlying events that gave rise to an arrest. *See Morowitz*, 200 Conn. at 450-51; *Rado*, 216 Conn. at 550 ("The Erasure Act was not intended to obliterate memory or to exclude any testimony not shown to have been derived from erased records."); *Rawling*, 206 Conn. at 109-10 ("[T]he erasure statute applies only to records of a prior prosecution, not to a victim's memory of an assault, which is not based on records but on personal knowledge."). The parties have litigated this case based on the assumption that the published information about the arrest of Ms. Martin was derived from court or law enforcement records, and the Court makes the same assumption for purposes of these motions.

The "deemer" provision in subsection (e)(3) of the Erasure Statute does not alter the truth that an individual qualifying for erasure was arrested. What was true in 2010 remained true on January 11, 2012 and remains true today: Ms. Martin was arrested.

### B. Plaintiff's Claims

Ms. Martin's claims all hinge on her interpretation of the "deemer" provision, and rejection of that interpretation makes all four of those claims insufficient as a matter of law. The First Count (per se defamation – libel) fails because there is no genuine dispute that the articles at issue were not false—both before and after January 11, 2012. *See Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 316 (1984) ("Before a party will be held liable for libel, there must be an unprivileged publication of a *false* and defamatory statement." (emphasis added)).

The Second Count (publicity placing another in a false light) is deficient for the same reason—i.e., the articles at issue do not contain falsehoods. "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; . . . and (2) is such a 'major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131 (1982) (quoting Restatement (Second) Torts § 652E, cmt. c). Indeed, the First Amendment requires that "a media defendant can be liable for a false light invasion of privacy *only* where it publishes highly offensive material without regard to its falsity, and to the false impression relayed to the public. As long as the matter published is substantially true, the defendant was constitutionally protected from liability for a false light invasion of privacy, regardless of its decision to omit facts that may place the plaintiff under less harsh public scrutiny." *Id.* at 132 (citation omitted and emphasis added). As there is no dispute that the statements were true, Ms. Martin's false light claim cannot succeed.

11

The Third Count (NIED) is also rendered inadequate as a matter of law  The only plausible NIED theory that Ms. Martin pled in her complaint was premised on the Defendants' publication of the articles at issue.  There is nothing negligent, however, about publishing a true, newsworthy article. *See Finelli v. Tepfer*, No. CV075011659S, 2009 WL 1424688, at *7 (Conn. Super. Ct. Apr. 24, 2009).  Because there is no dispute that the statements in the articles were true—and continue to be true—there was no negligence, and Ms. Martin's NIED claim fails.

Finally, the Fourth Count (invasion of privacy by appropriation) is similarly deficient. Although the Connecticut Supreme Court has not spelled out the elements of this tort, it has acknowledged the tort's existence.  *Warren v. Conn. Cmty. For Addiction Recovery, Inc.*, No. CV095005416S, 2010 WL 4342283, at *21 (Conn. Super. Ct. Sept. 15, 2010) (citing *Goodrich*, 188 Conn. at 127).  In evaluating the merits of such claims, lower courts apply the Restatement, which makes clear that the "value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities." *See id.* (quoting Restatement (Second) Torts § 652C cmt. d).  Indeed, a comment to the relevant Restatement section expressly rejects the notion that the tort would apply to a newspaper when it publishes an article about an individual without her permission.  *See* Restatement (Second) Torts § 652C cmt. d ("The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness [as is required to establish liability]. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.").  The Fourth Count, too, must be dismissed.

    **C.**    **Main Street's Bankruptcy**

A final issue remains.  On May 22, 2013, Defendant Main Street filed a notice indicating that it filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code.  (Notice of Bankruptcy Filing [Dkt. # 49].)  Upon such a filing, Section 362 of the Bankruptcy Code mandates an automatic stay of judicial proceedings  *See* 11 U.S.C. § 362(a)(1) (providing that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title").  This automatic stay, however, does not extend to non-debtor co-defendants like Hearst and New 12, except in special circumstances not applicable here.  The propriety of resolving Hearst's and New 12's motion is not at issue; the question, rather, is whether the § 362 automatic stay precludes the Court from dismissing the claims against Main Street.

By its terms, the automatic stay provision prohibits the "commencement or continuation" of a judicial proceeding. 11 U.S.C. § 362(a)(1).  The issue is whether an order of dismissal would constitute a "commencement or continuation" of this case.  The Second Circuit has not addressed whether a Section 362 stay precludes the entry of an order of dismissal when the debtor is the defendant, and other circuits have split on the issue.  *Compare Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 966 F.2d 457, 459 (9th Cir. 1992) ("In this posture of the case, we can see no statutory purpose to be served by applying the automatic stay to [the debtor's] motion to dismiss this appeal or to our disposition of that motion. We hold that § 362(a) does not preclude the motion to dismiss or our action thereon."), *and Dennis v. A.H. Robins Co.*, 860 F.2d 871, 872 (8th Cir. 1988) (per curiam) (Section 362(a) does not "preclude another court from dismissing a case on its docket or . . . affect the handling of a case in a manner *not inconsistent with the purpose* of the automatic stay" (emphasis added)), *with Pope v. Manville Forest Prods.*

13

*Corp.*, 778 F.2d 238, 239 (5th Cir. 1985) ("[I]t seems to us that ordinarily the stay must be construed to apply to dismissal as well.").

This Court finds more persuasive the approaches of the Eighth and Ninth Circuits in the cases cited above, and concludes that a court's post-stay entry of an order of dismissal, at least where the stay does not take effect until after briefing on the motion to dismiss is complete, does not constitute a "commencement or continuation" under § 362(a) as long as the dismissal is consistent with the purposes of the statute. *Indep. Union*, 966 F.2d at 459. Section 362(a) serves twin purposes: (1) to protect the debtor, and (2) to protect the debtor's creditors. *See id.*; *see also Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 64 (2d Cir. 1986) (noting that the automatic stay "provides the debtor with a breathing spell from his creditors" (internal quotation marks omitted)). Here, resolving Main Street's motion to dismiss, which was ripe before Main Street filed its suggestion of bankruptcy and which raises arguments substantively identical to Hearst and News 12's motion, is consistent with the purposes of the automatic stay provision. No harm comes to the debtor or other creditors from the dismissal of this action. Rather than staying the action as to Main Street, the Court will therefore order that the complaint be dismissed in full.

### IV.   Conclusion

For the reasons stated above, Defendants' Motions to Dismiss [Dkt. # 24, 26], which the Court treats as motions for summary judgment, are GRANTED. The Clerk is directed to enter judgment for Defendants and to close this case.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.


Dated:	Hartford, Connecticut
	August 5, 2013